FILED

2004 APR 23 PM 12: 21

CLERK U.S. DISTRICT COURT
TAMPA, FLORIDA

**UNITED STATES DISTRICT COURT,**
**IN AND FOR THE MIDDLE DISTRICT OF FLORIDA**

ACCUSEARCH INFORMATION
SYSTEMS, INC.,
     Plaintiff,

v.

Case No.

8:04-CV-914-T-17M55

VENGROFF, WILLIAMS &
ASSOCIATES, AUTOMOTIVE
FINANCE CORPORATION, and
AUTOMOTIVE FINANCE CANADA, INC.,
     Defendants.

                        /

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Comes now Plaintiff, **ACCUSEARCH INFORMATION SYSTEMS, INC.** by

and through the undersigned attorney hereby sues the Defendants **VENGROFF,**

**WILLIAMS & ASSOCIATES, AUTOMOTIVE FINANCE CORPORATION,** and

**AUTOMOTIVE FINANCE CANADA, INC.,** and in support thereof alleges the

following:

**JURISDICTIONAL STATEMENT**

1.    Under 28 U.S.C. § 1332, complete diversity exists between the parties. Plaintiff is

        a corporation incorporated under the laws of Canada having it's principal place of

        business in the province of Ontario. Defendant, Automotive Finance Canada, Inc.,

        is a corporation duly organized under the laws of Canada having it's principal

        place of business in the province of Ontario. Defendant, Automotive Finance

$150.00
TQ26868

1

to various third parties, with it's principal place of business located at 13085 Hamilton Crossing Blvd., #300, Carmel, IN 46032.

5.     That **AUTOMOTIVE FINANCE CANADA, INC.**, (hereinafter AFI) is a foreign for profit corporation duly organized under the laws of Canada, and is in the business of providing financing to various car dealerships in the United States and Canada so that these car dealerships could buy inventory and sell automobiles to various third parties, with it's principal place of business formerly located at 333 Preston Street, Ottawa, Ontario, Canada. The registered office address is located at 515 Legget Drive, Kanata, Ontario, Canada.

## INTRODUCTION

6.     E-DEBT is company that procures sellers of account receivables over the internet. The representative relevant to this cause of action is Tom Coyne. E-DEBT originally contacted Accusearch regarding the portfolios of accounts receivables owned by Defendants. They had previous business relations as Accusearch had paid for the E-DEBT services provided on the internet.

7.     Accusearch Information Systems, Inc., (Plaintiff) is a Canadian company that buys account receivable portfolios. Accusearch after buying said portfolios may pursue collection on the portfolios or sell said portfolios to a buyer on the open market. Accusearch originally bought the portfolio from Defendants.

8.     666143 B.C. Ltd. (hereinafter referred to as BC Ltd) is a British Columbia corporation and the ultimate purchaser of the portfolio which is the subject matter of

this suit.

9.  Automotive Finance Corporation (hereinafter referred to as AFC) is an Indiana corporation which provides financing to various car dealerships in the United States and Canada which provided inventory for the car dealership lots. AFC, as a result of said financing, incurred debts now delinquent which comprise the accounts receivable portfolios which is the subject matter of this suit.

10. Automotive Finance Canada, Inc. (hereinafter referred to as AFI) is a Canadian corporation and an affiliate of AFC in the United States, which provides financing to various car dealerships in the United States and Canada which provided inventory for the car dealership lots. AFI as a result of said financing, incurred debts now delinquent which comprise the accounts receivable portfolios which is the subject matter of this suit.

11. Vengroff, Williams and Associates (hereinafter referred to as VWA) is a corporation located in Sarasota, Florida. VWA was held out and was acting as agent for AFC and AFI. Also, VWA was Accusearch's original contact through E-Debt regarding said portfolios.

## FACTS

12. Defendant AFC on it's own behalf or on behalf of it's affiliate AFI, as a result of entering into various agreements for financing with the various third party car dealerships described in previous paragraphs, incurred certain debt receivable for outstanding loans with these third parties, which AFC or AFI no longer wished to

pursue collection on, and which Defendants wished to sell on the open market for debt collection in Canada.

13. Defendants AFC and AFI, held out Defendant VWA as their agent in the United States for completing the sale of loans described in this Complaint. Moreover, VWA was responsible for ascertaining the validity of the accounts receivables portfolio by investigating ("scrubbing") to check the validity of said portfolios.

14. At all relevant times to this cause of action, Plaintiff enjoyed a business relationship with the company E-DEBT. Plaintiff and E-DEBT representative Tom Coyne entered into an agreement in which E-DEBT would procure sellers of accounts receivables portfolios for the benefit of Plaintiff to buy or sell on the open market.

15. E-DEBT representative Tom Coyne contacted Plaintiff regarding a portfolio of accounts receivables which was of considerable value. E-DEBT then put Plaintiff in contact with Defendant VWA to inquire about the accounts receivables portfolios.

16. On or about March 11, 2003 the Plaintiff and Defendants, through their agent VWA, entered into negotiations for the purchase of the accounts receivables portfolios.

17. Plaintiff acting in reliance on the information provided by Defendant VWA, entered into negotiations with potential buyers of said portfolios. Defendant's fundamental warranties about the loans outlined in this Complaint are as follows:

   a. The Defendants extended floor plan financing to auto dealers so the dealers

could increase their inventory on their lots;

b.    The Defendants would provide to any purchaser of the AFC loans sufficient documentation once the receivable portfolio was purchased, including but not limited to: account applications, billing statement, copies of driver's licenses, payment histories and correspondence

c.    The overall portfolio value of the AFC loans was comprised of valid ongoing debt accounts worth $5,831,476.40 in United States dollars.

d.    The accounts were current being established no later than in 1998;

e.    All accounts had at least one personal guarantor and most had 2;

18.    On or around March 20, 2003, Plaintiff was contacted by Ross Hamilton, President of 666143 B.C. Limited (hereinafter B.C. Ltd) a British Columbia corporation, and entered into negotiations with the Plaintiff to purchase the accounts receivables portfolios from Plaintiff.

19.    On or about April 28, 2003, Ross Hamilton acting on behalf of BC Ltd entered into an agreement with Plaintiff to purchase the accounts receivables portfolios from the Plaintiff for $363, 249.44 Canadian currency. As a result of this contract, Plaintiff and B.C. Ltd. agreed orally to a series of contracts for the purchase and sale of accounts receivables portfolios with Plaintiff acting as agent for principal B.C. Ltd.

20.    After negotiations, on April 29, 2003, Plaintiff and Defendants entered into a written contract to purchase for good and valuable consideration the outlined

accounts receivables portfolios in this Complaint, subject to conditions precedent.

## COUNT I
## BREACH OF CONTRACT
### (as to all Defendants)

21.    Plaintiff entered into a written contract with Defendant on April 29, 2003. (The

contract is attached to this pleading, labeled Exhibit A, and is made a part of this

pleading for all purposes). The contract was for the sale by the Defendant and

purchase by the Plaintiff of accounts receivables portfolios outlined in this

Complaint.

22.    Plaintiff has performed all of it's duties under the contract including payment in

full.

23.    Plaintiff performed all conditions precedent to be performed by Plaintiff or the

conditions have occurred.

24.    Defendants have failed to perform under Section 2 and it's subsections of the

contract which are as follows:

"Section 2: With respect to the above Receivables, the Seller warrants that in

reliance upon documents and information furnished to it by Issuer or Owner

immediately preceding Seller:


(A)    It owns good and marketable title to all of the receivables, free and clear of

any liens and pledges;

(B) It has full power or authority to sell, assign and transfer and convey the receivables to the Buyer, and all other necessary proceedings on the part of the Seller have been duly taken to authorize the sale;

(C) All the Receivables were made for valuable considerations and are now legally enforceable obligations of the respective persons shown as indebted thereon, except as may be limited by the statute of limitations. If any Receivable is deemed legally unenforceable due to failure of such Receivable to comply with any provincial guideline with respect to the execution of the contractual language of such Receivable, then Buyer shall verify that such Receivable is legally unenforceable by providing Seller with a copy of the court order dismissing the lawsuit to collect such Receivable as being legally unenforceable as set out above and then Seller shall substitute such Receivables with comparable Receivables subject to Seller's warranties as set out in this Agreement;

(D) The amounts shown on the hard copy an/or diskette to be owing and unpaid on the respective Receivables represent the amount that was represented to Seller by Issuer, to be due;

(F) The account balance of said portfolio, which, as of September 30, 2002, total $7,632,751.00 in Canadian currency.

(G) If any of the Receivables shall meet the conditions precedent delineated in Exhibit B attached hereto and if Buyer shall identify and notify Seller of

Such Receivables within 90 days from the date of this Agreement, then

Seller shall substitute such Receivables with comparable Receivables,"

(within 30 days; See Exhibit A for hand written addition).

25.    After Plaintiff received documents, Plaintiff determined that a substantial portion

of the Receivables were in breach of the warranties expressly stated in the

Agreement, including but not limited to: bankruptcies as to the guarantors,

deceased guarantors, files with judgments on them, files barred by statute of

limitations, files actively engaged by other debt collections agencies, and files

settled and paid for by guarantors.

26.    Defendant failed to perform under Section 5 of the contract. On or about April

29, 2003, the Plaintiff transferred the agreed upon amount to VWA. Defendants

never delivered two (2) of the files to be included in the sale of the portfolio.

Defendants AFC and AFI continued to collect payments and negotiate on debts

from the purchased portfolios and failed to forward the collected monies to

Plaintiff.

27.    Defendants have failed to perform under section 9 of the contract. The Defendants

failed to perform on closing and execution by delivering portfolios on or around

May 5, 2003, which was 5 (five) days later than execution and closing.

28.    As an inducement to enter into a binding contract the Defendant made material

representations to Plaintiff that the above mentioned Receivables were only a small

portion of what the Defendant could provide the Plaintiff for the series of future

contracts between the parties in the debt collection business. The Defendant has failed to bargain in good faith and has not provided any portfolios for future contracts. In reliance, Plaintiff changed their position to facilitate the present and future agreements.

29. The interest and penalty calculations on the said files were unenforceable as all the loan calculations were not made in accordance with Defendants own Canadian contracts and the interest and penalty rates exceeded the Canadian usury rate as allowed by Canadian Law;

30. Plaintiff, has retained Jonathan R. Saunders, Esq., to represent Plaintiff in this action and has agreed to pay a reasonable attorney fee. Plaintiff, if it is prevailing party in this action, is entitled, under Section 8D of the contract to "all losses, judgments, expenses, and/other costs (including all fees and costs of legal counsel) for any acts or claims created by Seller." Plaintiff is entitled to recover attorneys' fees because the Defendant breached this contract in the manner alleged in the Paragraphs, above and below, and Plaintiff has been compelled to employ counsel to enforce Plaintiff's rights.

**WHEREFORE,** Plaintiff has suffered damages as a result of the Defendant's breach of their contract. As a result of Defendant's breach of contract, the Plaintiff has incurred incidental and consequential damages, losses, costs, expenses and will incur damages, losses, costs and expenses in the future. The Plaintiff should be

awarded attorney's fees, interests and any further relief this court deems proper and just.

## COUNT II
### BREACH OF COVENANT OF
### GOOD FAITH AND FAIR DEALING
### (as to all Defendants)

31.   Plaintiff incorporates the foregoing paragraphs herein by reference as though fully

set forth.

32.   Defendants were dishonest in fact in negotiations with Plaintiff. Plaintiff paid in

good faith with the understanding that all conditions precedent had been

performed. Defendant represented to Plaintiff that the total face value of the

portfolio amount was $5,831,476.40.00 in U.S. currency. Plaintiff discovered only

after sale that the face value was far below Defendant's promise of

$5,831,476.40.00. In particular, the Plaintiff was not able to see or work with the

debt portfolios until they were delivered by Defendants. The Defendants were

under a duty to validate the legal enforceability of the debt portfolios before

execution of the Agreement.

33.   Defendants misrepresented to Plaintiff concerning the validity of debt receivables

portfolio by inducing Plaintiff into buying a portfolio that was far less in value than

the negotiated value. Defendant knew or should have known that they would not

perform under the contract regarding the availability of replacement files.

34.   Defendant was dishonest in fact in the performance under the contract. Plaintiff

awarded attorney's fees, interests and any further relief this court deems proper and just.

## COUNT II

### BREACH OF COVENANT OF
### GOOD FAITH AND FAIR DEALING
### (as to all Defendants)

31.     Plaintiff incorporates the foregoing paragraphs herein by reference as though fully
set forth.

32.     Defendants were dishonest in fact in negotiations with Plaintiff. Plaintiff paid in
good faith with the understanding that all conditions precedent had been
performed. Defendant represented to Plaintiff that the total face value of the
portfolio amount was $5,831,476.40.00 in U.S. currency. Plaintiff discovered only
after sale that the face value was far below Defendant's promise of
$5,831,476.40.00. In particular, the Plaintiff was not able to see or work with the
debt portfolios until they were delivered by Defendants. The Defendants were
under a duty to validate the legal enforceability of the debt portfolios before
execution of the Agreement.

33.     Defendants misrepresented to Plaintiff concerning the validity of debt receivables
portfolio by inducing Plaintiff into buying a portfolio that was far less in value than
the negotiated value. Defendant knew or should have known that they would not
perform under the contract regarding the availability of replacement files.

34.     Defendant was dishonest in fact in the performance under the contract. Plaintiff

informed the Defendants of the unenforceable debt in the portfolios and Defendant failed to respond expeditiously under the agreement. The replacements that were eventually sent were found, by Plaintiff, to be unenforceable as well.

35.     Defendant was dishonest in fact in the performance in their duty in delivering the portfolio to Plaintiff and in their replacement of the files in the portfolio that were found to unenforceable.

36.     Defendants failed to provide critical and timely information concerning the status of the files that comprised the accounts receivable portfolio of the AFC ans AFI Loans.

37.     Defendant's conduct constitutes a breach of covenant of good faith and fair dealing inherent in every contract.

     **WHEREFORE**, As a result of Defendants breach of covenant of good faith and fair dealing the Plaintiff has incurred damages, losses, costs and expenses and will incur damages, losses, costs and expenses in the future.


### COUNT III

### VIOLATION OF DECEPTIVE AND
### UNFAIR TRADE PRACTICES UNDER FLORIDA STATUTES
### (as to all Defendants)

38.     Plaintiff incorporates the foregoing paragraphs herein by reference as though fully set forth.

39.     Plaintiff sues Defendants for violation of §501.204 of Florida Statutes.

40. Defendants misrepresented to plaintiff concerning the validity of debt receivables portfolio by inducing Plaintiff into buying a portfolio that was far less in value than the negotiated value. Defendant knew that they would not perform under the contract regarding the availability of replacement files.

41. Defendants knew that said portfolios would induce Plaintiff into entering a contract that would in turn induce future contracts between the parties.

42. After agreeing to bargain in good faith, Defendants unfairly pressured Plaintiff to close the contract and sale.

**WHEREFORE**, As a result of Defendant's unfair and deceptive trade practices the Plaintiff has incurred damages, losses, costs and expenses and will incur damages, losses, costs and expenses in the future. Further, Plaintiff should be awarded attorney's fees, interests and any further relief this court deems proper and just.

### COUNT IV
### FRAUD IN THE INDUCEMENT
### (as to all Defendants)

43. Plaintiff incorporates the foregoing paragraphs herein by reference as though fully set forth.

44. Defendants represented to Plaintiff during negotiations for the accounts receivable portfolio, and before the contract was entered into by the parties, that the portfolio was free from: a) bankruptcies as to the guarantors; b) deceased guarantors; c) files with judgments on them; d) files barred by statute of limitations; e) files actively engaged by other debt collections agencies; and f) files settled and paid for

by guarantors. Defendant was obligated to purge portfolios of any invalid files.

45. As a further inducement to enter into a binding contract the Defendant made material representations to Plaintiff that the said loan portfolio was only a small portion of what Defendant shall provide the Plaintiff for future contracts that would be as profitable as the present agreement.

46. These material representations were made for the purpose of inducing Plaintiff to purchase the loan portfolio from Defendant.

47. These representations were false and known to be false by Defendant at the time the representations were made because the portfolio included accounts that had guarantors that were either bankrupt or deceased for more than seven (7) years, files with judgments on them, files barred by statute of limitations, files actively engaged by other debt collections agencies, and files settled and paid for by guarantors. Defendant was obligated to purge portfolios of any invalid files.

48. The Defendant's material representations induced the Plaintiff into entering the contract with Defendant and Plaintiff relied on false representations to it's detriment.

49. As a result, Plaintiff purchased a portfolio that was far below the agreed upon value between the parties and Defendant was unable to perform not only this contract, but any other future contracts that was represented to Plaintiff. Plaintiff cannot collect or was frustrated Plaintiff's ability to sell the portfolio as it had intended.

**WHEREFORE**, As a result of Defendant's false and material representations, the Plaintiff has incurred incidental and consequential damages, losses, costs, expenses and will incur damages, losses, costs and expenses in the future. Plaintiff should be awarded punitive damages, attorney's fees, interests and any further relief this court deems proper and just.

### COUNT V

### INTERFERENCE WITH CONTRACT
### AND BUSINESS RELATIONS
### (as to all Defendants)

50. Plaintiff incorporates the foregoing paragraphs herein by reference as though fully set forth.

51. At all relevant times to this cause of action, Plaintiff enjoyed a business relationship with the company E-DEBT. Plaintiff and E-DEBT representative entered into an agreement in which Tom Coyne would procure sellers of accounts receivables portfolios for the benefit of Plaintiff. Defendants knew of Plaintiff's contractual relations with E-DEBT.

52. As a result of this relationship, Plaintiff entered into a contract with B.C. Limited on or about April 29, 2003 which Plaintiff was to sell the acquired accounts receivable portfolios to B.C. Ltd. Plaintiff and B.C. Ltd. agreed orally to a series of contracts for the purchase and sale of accounts receivables with Plaintiff acting as agent for principal B.C. Ltd. Defendants knew of Plaintiff's contractual relations with B.C. Ltd.

53. Defendant effectively terminated the contract with B.C. Ltd. and their business relationship with E-DEBT by intentionally and unjustifiably:

   a. Publishing to E-DEBT that they should discontinue their business with Plaintiff;

   b. By publishing to E-DEBT that Plaintiff was not professional in their business relations;

   c. Accusing Plaintiff of misrepresentation with no ground therefore;

   d. Soliciting E-DEBT to bypass Plaintiff in the future series of contracts for the accounts receivable portfolios and to disparage Plaintiff's reputation in the business community and to contract solely with Defendants.

54. As a result of Defendants intentional misconduct B.C. Ltd. and E-DEBT terminated dealings with Plaintiff on or around April 29, 2003.

55. Plaintiff has incurred expenses in trying to repair the damages created by Defendants and lost profits the Plaintiff could have performed under the current contract and agreed upon future contracts: Plaintiff has been injured in it's business reputation and has lost the possibility of renewing the contract and future contracts and which was a profitable business relation between Plaintiff, B.C. Ltd. and E-DEBT respectively.

**WHEREFORE,** As a result of Defendant's intentional interference with business relations, Plaintiff has incurred incidental and consequential damages, losses, costs, expenses and will incur damages, losses, costs and expenses in the future. Plaintiff should

be awarded punitive damages, attorney's fees, interests and any further relief this court deems proper and just.

## COUNT VI
## LIBEL
### (as to all Defendants)

56.   Plaintiff incorporates the foregoing paragraphs herein by reference as though fully set forth.

57.   Plaintiff was and is a corporation, good name, credit and reputation and enjoyed the esteem and good opinion of it's business relations and others in the business community.

58.   Defendant knew of the good name, credit and reputation of the Plaintiff. On or about April 16, 2003 in Sarasota, Florida, Defendant composed and published a letter, to Tom Coyne, in which among other things the following false scandalous and defamatory statements concerning Plaintiff was made:

    a.    " They have brought to my attention the number of untruths told to us all by AccuSearch."

    b.    "After Shannon's conversation with Fran York he contacted you and stating this deal would close for $120,000 in US funds by end of business Tuesday. Which ended up being a completely different story than what had been translated to Fran York, again leaving my client to wonder what the truth is."

    c.    "I would strongly recommend that E-Debt

discontinue their business with Accusearch to insure that continued business with potential sellers. I can honestly say that if it were not for you Tom I would have taken my business elsewhere after the first closing date had passed."

d. "In my experience I have never dealt with a company with less professionalism than AccuSearch. Linda Carson has called my office and misrepresented herself to both my assistant and my boss, which is completely unacceptable considering the outcome is THEY STILL DO NOT HAVE FUNDING TO CLOSE THIS DEAL! I will be forwarding a letter to E-Debt directly explaining the circumstances surrounding the non-sale."

The statement was maliciously intended to injure Plaintiff and to bring Plaintiff into public scandal and disgrace.

59. Defendant's intent to publish the letter was not made known to the Plaintiff before publication. Defendant forwarded a copy to Plaintiff. Defendant had no grounds or basis to determine whether the truth of the matters and conducted no inquiry before initially composing the letter.

60. Defendant failed to ascertain the facts which directly contradict the published defamatory statement. Defendant willfully and deliberately disregarded the truth that could easily be ascertained before Defendant maliciously made the publication of the defamatory letter in spite of information contrary to the defamatory

statement.

61.     As a result, Plaintiff was injured in his good name, credit and reputation and has

been brought into public scandal and disgrace, has been shunned by previous

business relations, has been injured in it's business by having lost trade and

experienced difficulty in obtaining new contracts in the debt collection business.

**WHEREFORE**, As a result of Defendant's intentional and malicious defamatory

statement, the Plaintiff has incurred incidental and consequential damages, losses, costs,

expenses and will incur damages, losses, costs and expenses in the future. Plaintiff should

be awarded punitive damages, attorney's fees, interests and any further relief this court

deems proper and just.

**WHEREFORE**, Plaintiff, **ACCUSEARCH**, demands a trial by jury on all the

above counts and  respectfully requests relief consistent with this Complaint for Damages

and such other relief as to this honorable Court shall deem proper.

Respectfully submitted,

By: _____
Jonathan R. Saunders
Trial Counsel
Florida Bar No. 0684554
O'Day & Saunders, P.A.
677 N. Washington Blvd.
Sarasota, Florida 34236
Tel. (941) 358-1991
Fax (941) 952-5823

# PURCHASE AGREEMENT

29th ᵒᴷ Seller
ᴺᴿ Buyer

THIS AGREEMENT, made this 3rd day of April, 2003, by and between Automotive Finance Canada, Inc., on behalf of itself and all of its affiliates (hereinafter referred to as "Seller"), and AccuSearch Information Systems(hereinafter referred to as "Buyer"),

1.   In consideration of $120,000.00 USD with consideration to be made by cashier's check or by wire transfer at the closing hereof, the Seller hereby sells, assigns, transfers and conveys to Buyer without recourse, warranty, either expressed or implied, or liability except as herein expressly set forth, all the obligations (hereinafter referred to as "Receivables") referenced in Schedule A attached hereto and made a part hereof. The above purchase shall include transfer to Buyer of electronic records in Seller's possession relating to said Receivables. Seller makes no guarantees as to the availability of any documentation and funds will not be refunded due to the lack of documentation.

2.   With respect to the above Receivables, the Seller warrants that in reliance upon documents and information furnished to it by Issuer or Owner immediately proceeding Seller:

   A.   It owns good and marketable title to all of the Receivables, free and clear of all liens and pledges.

   B.   It has full power and authority to sell, assign transfer and convey the Receivables to the Buyer, and all other necessary proceedings on the part of the Seller have been duly taken to authorize the sale.

   C.   All the Receivables were made for valuable considerations and are now legally enforceable obligations of the respective persons shown as indebted thereon, except as may be limited by the statutes of limitations. If any Receivable is deemed legally unenforceable due to failure of such Receivable to comply with any provincial guideline with respect to the execution or the contractual language of such Receivable, then Buyer shall verify that such Receivable is legally unenforceable by providing Seller with a copy of the court order dismissing the lawsuit to collect such Receivable as being legally unenforceable as set out above and then Seller shall substitute such Receivables with comparable Receivables subject to Seller's warranties as set out in this Agreement.

   D.   The amounts shown on the hard copy and/or diskette to be owing and unpaid on the respective Receivables represent the amount that was represented to Seller by Issuer, to be due.

   E.   There are no judgments against the Seller that could become a lien against the Receivables.



EXHIBIT
A

F. The account balances of said portfolio, which, as of September 30, 2002, total $7,632,751, in Canadian currency.

G. If any of the Receivables shall meet the conditions precedent delineated in Exhibit B attached hereto and if Buyer shall identify and notify Seller of such Receivable within 90 days from the date of this Agreement, then Seller shall substitute such Receivables with comparable Receivables. *within 30 days of receipt of requests.*

3. Buyer shall advise debtors who are obligated on the Receivables that A) it has purchased such Receivables and that all payments thereon shall be made to the Buyer and B) all legal and other action respecting the Receivables shall be taken by the Buyer in its own name and not the name of the Seller.

4. Seller hereby constitutes and appoints Buyer the true and lawful special attorney-in-fact of Seller and/or Originating Entity in the name and stead of Seller and/or Originating Entity, on behalf of and for the benefit of Buyer, to endorse the name of the Seller and/or Originating Entity without recourse upon all checks, drafts, notes, powers and other forms of exchange received as payment on any of the affected Receivables.

5. Seller further agrees that any payment made by the Buyer and received by the Issuer on said Receivables from and after the close of business on the date of this Agreement shall be turned over and delivered to Buyer at the time of the consummation of this Agreement. Issuer and/or Seller will continue to forward payments made after the closing date.

6. The purchase and sale contemplated by this Agreement may be subject to the approval of certain regulatory authorities, and if so the parties agree to obtain such approval prior to the date of closing; otherwise, this Agreement shall be void at the other party's sole opinion.

7. This Agreement and any disputes arising under or as a result of the negotiations or execution of this Agreement shall be governed by and its provisions construed under the laws of the Commonwealth of Pennsylvania and Federal laws where applicable.

8. Buyer represents and warrants to Seller that:

A. That it has full power and authority to purchase the Receivables from Seller and that all necessary proceedings on its part have been duly taken to authorize this purchase.

B. Except as provided in paragraph 6 hereof, the relationship of the parties is solely that of Seller and Buyer and Buyer shall have no authority or

capacity otherwise to bind ~~or promote~~ Seller to any act, obligation or liability, nor shall Buyer have any authority to bind Seller contractually.

C. **Buyer or its assignees will not contact or in any way or manner communicate with the Originating Entity or its affiliates or subsidiaries concerning these Receivables.**

D. Buyer will indemnify and hold Seller harmless from any and all claims, demands, actions, causes of actions, suits, judgments, actual or punitive damages, statutory penalties, costs, fees and expenses arising from or in any way connected with Buyer's attempt(s) to collect on any Receivables or concerning the failure of Buyer to keep or comply with any term, condition, representation, warranty or agreement contained herein or the incorrectness or falsity of any representation or warranty, which is or becomes untrue in any material respect. The Seller will extend all of its rights to indemnification against the original creditor and/or prior owners of these Receivables. The Seller agrees that the Buyer will have no responsibility and will be fully indemnified for all losses, judgments, expenses, and/or other costs (including all fees and costs of legal counsel), for any acts or claims created by Seller.

9. Closing and the transfer of funds shall take place simultaneously with the execution herein.

10. This Agreement represents the entire agreement between the parties. There are no promises, inducements, representations, or warranties not expressly stated herein. This Agreement may not be modified except by written instrument signed by all of the parties hereto. This Agreement supersedes any prior understandings or written or oral agreements between the parties respecting the Receivables, or the rights and obligations of the parties hereto.

ANY ADDENDUM OR EXHIBITS ATTACHED HERETO BECOME A PART OF AND ARE INCORPORATED INTO THIS AGREEMENT.

SELLER:                                    BUYER:

Automotive Finance Canada, Inc.            AccuSearch Information Systems

By: _____              By: _____
   Joel G. Garcia, Secretary

[END OF DOCUMENT]

3

*PLEASE ADD AS Exhibit "B"*

## ADDENDUM TO LOAN SALE AGREEMENT
### EXHIBIT B
### RECOURSE QUALIFICATIONS

### BANKRUPTCY – Discharge

1.) Account must have been discharged prior to date of this Agreement.

2.) If there are two or more debtors on the same account, all debtors must have been discharged.

3.) Bankruptcy discharge must be verified by providing a copy of the discharge or following information necessary to verify the discharge.

     a.) Attorney Name
     b.) Attorney Phone Number
     c.) Case Number
     d.) Discharge Date

### DECEASED

1.) Debtor must have been deceased prior to the date of this Agreement.

2.) If there are two or more debtors on the same account all debtors must be deceased.

Verification must be provided. Seller will accept as evidence of death a copy of the death certificate, Credit Bureau Report or newspaper obituary.

### PAID IN FULL/SETTLED IN FULL

Verification must be provided.

### FORGERY/FRAUD

Verification must be provided by fraud or forgery affidavit.

### LEGALLY UNENFORCEABLE

All the Receivables were made for valuable considerations and are now legally enforceable obligations of the respective persons shown as indebted thereon, except as may be limited by the statues of limitations. If any Receivable is deemed legally unenforceable due to failure of such Receivable to comply with any provincial guideline with respect to the execution or the contractual language of such Receivable, then Buyer shall verify that such Receivable is legally unenforceable by providing Seller with a copy of the court order dismissing the lawsuit to collect such Receivable as being legally unenforceable as set above an then Seller shall substitute such Receivables with a comparable Receivable subject to Seller's warranties as set out in this Agreement.

*This needs to be "Recourse Qualifications" + part of Purchase Agreement —*